IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VISITING NURSE ASSOCIATION )
OF TEXAS )
1440 West Mockingbird Lane, Ste. 500 )
Dallas, Texas 75247-4975 )
)
)
           Plaintiff, )
)
v. )  Case: 1:08-cv-00438
)  Assigned To : Roberts, Richard W.
MICHAEL O. LEAVITT, Secretary, )  Assign. Date : 3/13/2008
Department of Health and Human Services )  Description: Admn. Agency Review
200 Independence Avenue, SW )
Room 615F )
Washington, DC 20202, )
)
           Defendant. )
)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT

I.  INTRODUCTION

1.    In accordance with 42 U.S.C. §1395oo(f), Plaintiff Visiting Nurse Association of Texas seeks judicial review of a final administrative determination pertaining to the Medicare reimbursement which it is owed for the Medicare cost reporting period for fiscal year ending ("FYE") June 30, 1997. The Plaintiff is a home health agency participating in the Medicare program.

2.    Plaintiff brings this action for review of the final determination of the Secretary of the United States Department of Health and Human Services (the "Secretary" and "HHS"), dated January 17, 2008, disallowing, for Medicare

reimbursement purposes, costs incurred by Plaintiff during the FYE to furnish physical therapy ("PT") services to patients using employed physical therapists. The disputed adjustment disallowed the portion of Plaintiff' PT costs that exceeded the Salary Equivalency Guidelines ("Guidelines") used by HHS to limit PT payments made by providers furnishing such services "under arrangement" with outside contractors. The pertinent statutory provision relied on by the Secretary, 42 U.S.C. §1395x(v)(5)(A), is applicable only to therapy services provided "under arrangement" through contractors rather than employees. The Secretary's decision is at odds with every judicial ruling on the issue and ignores the fact that the Secretary has settled all other litigation on the issue in a manner fully favorable to litigant home health agencies.

   3. In addition, Plaintiff seeks review of the final determination of the Secretary disallowing costs related to a deferred compensation plan for executives. The Secretary disallowed these costs on the basis that the Plaintiff did not utilize either a trustee, insurance company, or a custodial bank account to hold the funds. Plaintiff, however, established a trust compliant with Texas law. Further, the Plaintiff met all standards for a non-qualified deferred compensation plan pursuant to IRS rules.

   4. The PRRB, an administrative body composed of members who are "knowledgeable in the field of payment of providers of services" and established by law to adjudicate this dispute, 42 U.S.C. §1395oo(h), unanimously reversed the PT cost and deferred compensation cost disallowances that were imposed upon Plaintiff in a decision dated November 16, 2007. The PRRB found that the Guidelines during the periods at issue only applied to "under arrangement" services with outside contractors, not to employed physical therapists even when such employees are paid a portion of their

compensation on a fee-for-service basis. The PRRB further concluded that the Medicare Fiscal Intermediary ("Intermediary") could not utilize the Guidelines in place of a prudent buyer analysis to determine whether the Provider's costs for these services were "substantially out of line" when compared to the costs incurred by similarly situated providers for similar services. The parties had stipulated that the costs were not "substantially" out of line. The PRRB's decision was entirely consistent with numerous prior PRRB decisions, stretching back to 1988, on this same issue. It also was consistent with all of the judicial decision on this same issue.

5. With respect to the deferred compensation issue, the PRRB found that "no evidence exists that the plan was not adequately safeguarded." Further the PRRB found "that because the overall context of ... [Medicare policy] is to set conditions for non-qualified plans, the IRS standards which incorporate risk, may be considered."

6. The Secretary's final decisions are clearly contrary to the Medicare Act and implementing regulations, arbitrary and capricious, not based upon substantial evidence, and otherwise contrary to law. Accordingly, Plaintiff seeks a declaration reversing the Secretary's decision and an order compelling the Secretary to reimburse it for the actual costs incurred to furnish PT services to its patients and its costs for the deferred compensation plan, plus interest, legal fees, and costs of suit.

## II. JURISDICTION AND VENUE

7. This action arises under the Medicare Act, 42 U.S.C. §1395 et seq. and the APA, 5 U.S.C. §551 et seq.

8. This Court has jurisdiction under 42 U.S.C. §1395oo(f).

9. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f)(1).

3

### III. PARTIES

10. During its FYE June 30, 1997, Plaintiff Visiting Nurse Association of Texas ("VNA of Texas") operated a home health agency that was certified to participate in the Medicare program (Provider no. 45-7001). Plaintiff was located at 1440 West Mockingbird Lane, Dallas, Texas.

11. Defendant, Michael O. Leavitt, is the Secretary of HHS, the federal agency responsible for administration of the Medicare program.

### IV. GENERAL STATUTORY AND REGULATORY BACKGROUND

A. Medicare Reasonable Cost Reimbursement

12. The Medicare Act provides for various health insurance programs covering the aged and disabled. Part A of the Medicare Act provides – and during the periods at issue here provided – for hospital insurance benefits that cover "home health services" for individuals confined to their homes, under the care of physicians, and receiving services under plans of care established and periodically reviewed by a physician. Such individuals must be in need of skilled nursing care on an intermittent basis or must require PT or speech-language pathology or must have a continuing need for occupational therapy. 42 U.S.C. §§1395f(a)(2)(C) and 1395x(m).

13. During the period at issue, the Medicare Act mandated payment for PT services furnished to patients, either directly by the home health agency or by others under arrangements with the home health agency, and directed that the payment would be the lower of the home health agency's customary charges for the services or its "reasonable cost" for the services "as determined under section 1395x(v)." 42 U.S.C. §§1395f(b)(1) and 1395l(a)(2)(A)(i) and (ii) (1996).

4

14. Section 1395x(v) of the Medicare Act defines "reasonable cost." As originally enacted in the Social Security Amendments of 1965, Section 1395x(v)(1)(A) provided that: "[t]he reasonable cost of any services shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs. . . ." Pub. L. No. 89-97, §102(a). That provision for payment of reasonable cost is "intended to meet the actual costs, however widely they may vary from one institution to another, except where a particular institution's costs are found to be substantially out of line with those of institutions similar in size, scope of services, utilization, and other relevant factors." S. Rep. No. 404, 89th Cong., 1stSess. (1965), reprinted in 1965 U.S.C.C.A.N. 1943, 1976. The governing statute also requires that Medicare's "reasonable cost" regulations must ensure that Medicare reimburses the costs attributable to its beneficiaries and that the program neither bears the costs of non-Medicare patients nor shifts its costs onto those patients. 42 U.S.C. §1395x(v)(1)(A)(i).

15. The Medicare regulation implementing the statutory definition of "reasonable cost" was promulgated in 1966 and codified at that time at 20 C.F.R. §405.451. 31 Fed. Reg. 14,808, 14,816-17 (Nov. 22, 1066). The regulation is now codified at 42 C.F.R. §413.9.

16. The "reasonable cost" regulation has always provided: "[r]easonable cost includes all necessary and proper costs incurred in rendering the services [furnished to Medicare beneficiaries.]" 31 Fed. Reg. 14,816; 42 C.F.R. §413.9(a) (1997). The regulation has always defined "necessary and proper costs" to mean "costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities," and has always provided that necessary and proper costs "are

5

usually costs which are common and accepted occurrences in the field of the provider's activity." 31 Fed. Reg. 14,817; 42 C.F.R. §413.9(b)(2) (1997). Likewise, the "reasonable cost" regulation precludes Medicare from either shifting the costs of its beneficiaries to non-Medicare patients or bearing the costs of non-Medicare patients. 42 C.F.R. §413(a).

17.  With respect to payment for the reasonable cost of services, the regulation adopted virtually verbatim the above-quoted language describing the intent of the statutory provision for payment of reasonable costs in the legislative history of Section 1395x(v) of the Medicare Act. The 1966 version of the regulation provided:

> (2) The costs of providers' services vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care. The provision in title XVII of the Act for payment of reasonable cost of services is intended to meet <u>the actual costs, however widely they may vary from one institution to another</u>. This is subject to a limitation where a particular institution's costs are found to be <u>substantially out of line with other institutions in the same area which are similar in size, scope of services, utilization, and other relevant factors</u>.
>
> (3) The determination of reasonable cost of services must be based on cost related to the care of beneficiaries of title XVIII of the Act. Reasonable cost includes all necessary and proper expenses incurred in rendering services. . . . <u>The reasonable cost basis of reimbursement contemplates that the providers of services would be reimbursed the actual costs of providing quality care however widely the actual costs may vary from provider to provider and from time to time for the same provider</u>.

31 Fed. Reg. 14,817 (emphasis added). The language quoted above has remained virtually unchanged from 1966 to the present. See 42 C.F.R. §413.9(c)(2)-(3) (1997).

18.  In February, 1969, HHS published Section 2102.1 of the PRM. The 1969 version of PRM, §2102.1, reiterated the statutory mandate that reasonable costs shall be "determined in accordance with regulations establishing the method or methods to be used, and the items to be included."

6

19. The PRM was amended in November 1971. The 1971 version noted an "expectation that the provider seeks to minimize its costs and that its actual costs do not exceed what a prudent and cost-conscious buyer pays for a given item or service." Id.

B. <u>Medicare Salary Equivalency Therapy Rule</u>

20. In 1972, Congress amended the Medicare Act. Social Security Amendments of 1972, Pub. L. No. 92-603, 86 Stat. 1329 (the "1972 Amendments"). Among other things, the 1972 Amendments authorized the Secretary to adopt regulations to limit the reasonable costs incurred by providers to obtain therapy services <u>from outside contractors</u> to the salary and fringe benefits cost that would be incurred by a provider to furnish the services through employees plus travel and other reasonable expenses incurred by an outside contractor. 1972 Amendments, §251(c).

21. Section 251(c) of the 1972 Amendments enacted 42 U.S.C. §1395x(v)(5)(A), which, as noted above, authorized the Secretary to adopt regulations limiting the reasonable costs incurred by providers to obtain therapy services <u>from outside contractors</u> to the salary and fringe benefits cost that would be incurred by a provider to furnish the services through employees, plus travel and other reasonable expenses incurred by an outside contractor. In 1975, the Secretary adopted regulations implementing the authority to establish those salary equivalency limits on therapy costs related to the use of outside contractors. 40 Fed. Reg. 5,760 (Feb. 7, 1975). The Secretary's salary equivalency regulations are now codified in 42 C.F.R. §413.106.

22. The Secretary's salary equivalency regulations do not establish salary equivalency limits for any type of therapy service. 42 C.F.R. §413.106. Rather, the regulations prescribe a process by which salary equivalency guidelines may be

established by the Secretary for a particular type of therapy service. Id. Among other things, the regulations require the Secretary to approve and provide advance notice of separate salary equivalency guidelines for each type of therapy service. 42 C.F.R. §§413.106(c)(1) and (c)(5). The regulations also require publication in the Federal Register prior to the application of salary equivalency guidelines for a particular type of therapy service. 42 C.F.R. §413.106(d).

23.   When the Secretary originally issued salary equivalency limits for PT services, the preamble stated that they were confined to "under arrangement" services by "outside contractors" rather than services provided pursuant to employment relationships. 40 Fed. Reg. 5,760 (Feb. 7, 1975). This limitation was consistent with the language of 42 U.S.C. §1395x(v)(5)(A) and 42 C.F.R. §413.106(a), which was similarly restrictive. The same limitation was reiterated when HHS revised the Guidelines. E.g., 48 Fed. Reg. 44,922 (Sept. 30, 1983).

24.   In Transmittal No. 178 (June 1977), however, HHS amended Section 1403 ("Guideline Application") of the PRM to include the following language:

> The guidelines apply only to the costs of services performed by outside suppliers, not to the salaries of providers' employees. However, the costs of the services of a salaried employee who was formerly an outside supplier of therapy or other services, or any new salaried employment relationships, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.
>
> In situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

8

This extension of HHS's policy contravened the plain language of the governing statute and regulation. Moreover, neither Transmittal No. 178 nor PRM, §1403 were subjected to notice and comment rulemaking pursuant to the APA.

25.    In 1998, the Secretary amended 42 C.F.R. §431.106 specifically to have it apply to employment relationships in the same circumstances as enumerated in PRM, §1403. See 63 Fed. Reg. 5106 (Jan. 30, 1998); 42 C.F.R. §413.106(c)(5). Although the Secretary has attempted to claim that this alteration was only a clarification of existing policy, the effective date of the change was April 10, 1998 – after the period at issue. See 63 Fed. Reg. 15,319 (Mar. 31, 1998).

26.    The Secretary's "interpretation" that the Guidelines may be applied to employment relationships for periods before April 10, 1998, has not been applied uniformly or consistently by the Secretary. For example, the "interpretation" is not being applied to providers in : (a) states in the Eighth Circuit (Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota) because the Eighth Circuit has ruled against the Secretary's position; (b) Wyoming (where the Federal District Court ruled against the Secretary's position); and (c) the Eastern District of California (where the Federal District Court ruled against the Secretary's position). See In Home Health, Inc. v. Shalala, 188 F.3d 1043 (8th Cir. 1999); K&R Home Health Services, Inc. v. Thompson, No. Civ. 5-00-2501/LKK/DAD (E.D. Cal. Nov. 9, 2001); High Country Home Health, Inc. v. Shalala, 84 F.Supp. 2d 1241 (D. Wy. 1999). It also appears that the Secretary is not applying his "interpretation" consistently in the District of Columbia circuit, in Colorado, and the Eastern District of Pennsylvania (where the Secretary settled cases on this issue on terms favorable to the provider prior to any court ruling). See,

Erwine's Home Health Care, Inc., et al. v. Leavitt, No. 05-CV-02441 (ESH) (D.D.C.) (Dec. 7, 2006 settlement); All Care Home Health, Inc. v. Thompson, C.A. No. 02-AP-25 (MJW) (D. Colo.) (Jul. 19, 2002 settlement); Berks Visiting Nurse Ass'n v. Leavitt, No. 04-CV-5567 (E.D. Pa) (Oct. 19, 2005 settlement).

27. The Guidelines in place from October 1, 1982 through April 9, 1998, were based on 1981 data with a trend factor to update the data for inflation. 48 Fed. Reg. 44,922 (Sept. 30, 1983); 63 Fed. Reg. 15,315 (Mar. 31, 1998). When the Secretary reissued the Guidelines in 1998 utilizing more recent data, they increased 49.8 percent over the Guidelines in effect just one year earlier – a powerful indication that the Guidelines amounts during this period were insufficient and not a proper basis for any "reasonable" cost or "prudent buyer" analysis. Stated somewhat differently, for the 15½ years that the 1982 Guidelines were in effect, they underestimated PT cost increases by an average of more than 3.2 percent annually.

28. Accordingly, during the periods at issue here, the reasonable cost principles established in 42 U.S.C. §1395x(v)(1)(A) and 42 C.F.R. §413.9 govern a provider's entitlement to Medicare payment for costs incurred by the provider in using employees to furnish PT services to patients.

C. Deferred Compensation Plan Cost Standards

29. Outside the general statutory and regulatory provisions related to "reasonable cost" standards, the Secretary maintains no formal rules regarding the allowability of deferred compensation plan costs.

30. Under the Secretary's policy guidelines contained in the Provider Reimbursement Manual ("PRM"), standards governing the costs of deferred

compensation plans are included. The PRM at §2140 sets out these standards for a "non-qualified plan" under Internal Revenue Services requirements. PRM §2140.1.

31. PRM §2140.2 states that:

Provider contributions for the benefit of employees under a defined contribution deferred compensation plan are allowable when, and to the extent that, such costs are actually incurred by the provider. Such costs may be found to have been incurred only if the requirements of this section are met.

32. PRM §2140.3B(1) provides that:

A funded plan is one in which contributions are systematically made as a specific provision of the plan to a funding agency for the purpose of meeting retirement benefits. For Medicare purposes, a funding agency is either a <u>trustee, an insurance company, or a custodial bank account</u> which provides for the accumulation of assets to be used for the payment of benefits under the deferred compensation plan. Accordingly, both provider and employee contributions to the deferred compensation plan must be used either to purchase an insured plan with a commercial insurance company, to establish a custodial bank account, or to establish a trust fund administered by a trustee. [Emphasis added.]

D. <u>Medicare Cost Report Determinations Claims and Appeals</u>

33. After the close of each fiscal year, a provider must file a cost report with its Medicare fiscal intermediary, which audits the cost report and issues a final determination of the provider's reasonable costs of services furnished to Medicare beneficiaries in a notice of program reimbursement ("NPR"). See 42 U.S.C. §§ 1395h and 1395oo(a)(1)(A)(i); 42 C.F.R. §§ 405.1803(a)(1) and 413.20; Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399, 400-01 (1988).

34. A provider that is dissatisfied with the intermediary's determination of its reasonable cost, or a group of providers that are dissatisfied with intermediary determination involving a common issue regarding their reasonable costs, may appeal to

the PRRB. 42 U.S.C. §1395oo(a). The decision of the PRRB is final unless the Secretary (acting through the CMS Administrator) reverses, affirms, or modifies the Board's decision within 60 days after the provider is notified of the PRRB's decision. 42 U.S.C. §1395oo(f)(1). A provider or group of providers that is dissatisfied with the final decision of the Board, or with an affirmance, reversal or modification by the Secretary (acting through the Administrator), may appeal to the United States District Court for the District of Columbia or to the United States District Court for the judicial district where the provider is located or, in the case of a group appeal, where the greatest number of providers in the group are located. 42 U.S.C. §1395oo(f)(1).

## V.  FACTS SPECIFIC TO THIS CASE

A.  <u>Plaintiff's Employment Relationships</u>

35. During the periods at issue, Plaintiff employed physical therapists to furnish PT services to its patients. Plaintiff paid these physical therapists on a per-visit basis for the work they performed. It is undisputed that these individuals were employees of the plaintiff – they were subjected to payroll withholdings, received fringe benefits, had federal taxes withheld, and received W-2s. The Secretary stipulated that the therapists were employees in the proceedings before the PRRB.

B.  <u>Disallowance of Plaintiff's Costs</u>

36. On November 6, 1998 Palmetto Government Benefits Administrators, the Intermediary, issued a NPR for Plaintiff VNA of Texas's FYE June 30, 1997. A revised NPR was issued on January 4, 1999. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by Plaintiff to furnish PT services to its patients through the employed physical therapists.

The disallowance for this period for PT costs resulted in a reduction of $351,012 in Medicare reimbursement to Plaintiff.

37. The NPRs issued by the Intermediary also disallowed $35,390 of management fees related to a Deferred Compensation Plan, a non-qualified executive benefits plan established with a third-party administrator.

38. The Intermediary disallowances of Plaintiff's PT costs for these periods were based on the premise that Plaintiff paid too much for the PT services rendered by employed physical therapists in accordance with physicians' care plans for their patients. The Intermediary, therefore, disallowed portions of Plaintiff's PT costs in excess of the Guidelines, thereby assuming that: (a) the Guidelines were applicable to employment relationships, and (b) the amounts in the guidelines were a lawful and accurate barometer of what reasonable costs should be. Apart from rote application of the Guidelines, the Intermediary performed no separate or independent "prudent buyer" analysis as to these costs and their reasonableness.

39. The Intermediary disallowed the costs of the executive deferred compensation plan on the basis that it did not meet the standards of PRM §2141.3, a provision of the Provider Reimbursement Manual wholly inapplicable to a non-qualified deferred compensation plan. In doing so, the Intermediary failed to evaluate whether the applicable standards of PRM §2140 were met.

C.     Administrative Proceedings

40.    Plaintiff VNA of Texas timely appealed the Intermediary's disallowances of its FYE June 30, 1997 costs, including the PT and the deferred compensation plan costs, to the PRRB pursuant to the appeals process established under 42 U.S.C. §1395oo. The PRRB issued a unanimous decision on the record in Plaintiff's favor on these issues based upon the parties' written evidence and arguments. An unrelated costs dispute regarding third-party management fees was decided unfavorably by the PRRB. The PRRB's decision is dated November 16, 2007, and was received by Plaintiff on November 19, 2007.

41.    The PRRB concluded that the Intermediary's disallowance of PT costs using the Guidelines was improper under 42 U.S.C. §1395x(v)(5)(A) because the Guidelines were limited under that provision to "under arrangement" relationships with outside contractors and do not apply to employer relationships. The Board further reasoned the Guidelines could not be substituted for a prudent buyer analysis and that, instead, intermediaries were required to determine whether a provider's costs are "substantially out of line" by comparing those costs to costs incurred by similarly situated providers. The parties had stipulated that the costs were not "substantially out of line."

42.    The PRRB also determined that the Intermediary's disallowance of cost related to the executive deferred compensation plan was improper. The PRRB reasoned that the trust established under the plan met the requirement of a "core element" of a substantial risk of forfeiture of the rights to such compensation through insolvency and a violation of a non-competition clause. The PRRB found the IRS standards may be considered and that "no evidence exists that the plan was not adequately safeguarded."

43. The Deputy Administrator of CMS issued a decision reversing the PRRB, dated January 16, 2008, and was received by Plaintiff's representative on January 17, 2008. The reversal applied the Guidelines to the Plaintiff's therapy costs. The Deputy Administrator ruled that application of the Guidelines to employed therapists was not foreclosed by 42 U.S.C. §1395x(v)(5)(A). The Deputy Secretary offers that an IRS standard-based "employee" is not an employee for Medicare cost reimbursement purposes unless that individual received salary-based compensation and that a per-visit employment is an "under arrangement" relationship under Medicare.

44. Further, the Deputy Administrator found that the Intermediary properly disallowed the deferred compensation plan costs because the required methods of funding under PRM §§ 2140 and 2141.3 were not met.

45. Plaintiff has exhausted all available administrative remedies and bring this action for judicial review pursuant Total hours billed: he provision of 42 U.S.C. §1395oo(f).

## VI. ASSIGNMENT OF ERRORS

46. The Secretary's final decision is contrary to the Medicare Act and implementing regulations, arbitrary and capricious, not based upon substantial evidence, and otherwise contrary to law for several reasons, including the following.

47. The Secretary's decision upholding the application of the Guidelines to Plaintiff's PT costs for employees is arbitrary and capricious and violate the plain meaning and intent of 42 U.S.C §1395x(v)(5)(A) and 42 C.F.R. §413.106 as it existed during the periods at issue.

48. The Secretary's decision upholding the Intermediary's disallowances of therapy costs is an unlawful attempt to apply retroactively the terms of 42 C.F.R. 413.106(c)(5) that were only effective April 10, 1998, and thereafter.

49. The Secretary's decision upholding the Intermediary's disallowances of the Plaintiff's actual PT costs is also contrary to the plain meaning of the reasonable cost reimbursement provisions in 42 U.S.C. §1395x(v)(1)(A) and the implementing regulations codified at 42 C.F.R. §§ 413.5 and 413.9.

50. As construed and applied by the Secretary, PRM, §1403 is invalid because: (a) it conflicts with 42 U.S.C. §1395x(v)(1)(A) and (5)(A) and 42 C.F.R. §§ 413.9 and 413.106 as the latter existed during the periods at issue; and (b) it was not adopted in accordance with the notice and comment rulemaking procedures mandated by the APA, 5 U.S.C. §553.

51. The Secretary's decision upholding the Intermediary's disallowances of Plaintiff's PT costs is arbitrary and capricious and not based upon substantial evidence because it did not require the Intermediary to base its determinations on a prudent buyer analysis demonstrating that Plaintiff's actual PT costs were substantially out of line with comparable costs incurred by comparable providers for comparable services.

52. The Secretary's decision upholding the Intermediary's disallowances of Plaintiff's actual PT costs is arbitrary and capricious and not based on substantial evidence because it: (a) assumes the validity of the Guidelines as a proxy for measuring reasonable costs; and (b) ignores the necessity of additional compensation for employees who work on an overtime (more than full-time) basis.

53. The Secretary's decision upholding the use of the Guidelines in Plaintiff's case is arbitrary and capricious, not based on substantial evidence, and otherwise contrary to law because the Secretary himself is not applying the Guidelines uniformly.

54. The Secretary's decision that 42 U.S.C. §1395x(v)(5)(A), 42 C.F.R. §413.106 (1997), and PRM §1403 can be interpreted and applied consistently on the basis that an employed therapist receiving per-visit compensation should be considered as providing services "under arrangement" is arbitrary and capricious and not based on substantial evidence because "under arrangement" means services supplied by non-employees only without regard to the method of compensation.

55. The Secretary's decision upholding the Intermediary's disallowance of deferred compensation plan costs is arbitrary and capricious and not based on substantial evidence because Plaintiff's plan fully met the Secretary's standards in the Provider Reimbursement Manual along with the IRS standards for a non-qualified plan.

56. The Secretary's decision is without substantial justification.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiff requests:

(1) A declaration that the disallowances of Plaintiff's PT and deferred compensation plan costs are invalid because they are inconsistent with 42 U.S.C. §§ 1395x(v)(1) and 1395x(v)(5)(A), and 42 C.F.R. §§ 413.9 and 413.106 as it existed during the periods at issue;

(2) A declaration that the disallowances of Plaintiff's PT and deferred compensation plan costs are invalid because the disallowances conflict with the

reasonable cost reimbursement principles established in 42 U.S.C. §1395x(v)(1)(A) and 42 C.F.R. §413.9;

(3)   A declaration that the disallowances of Plaintiff's PT costs are invalid because the disallowances are based on a manual provision that conflicts with 42 U.S.C. §1395x(v)(5)(A) and 42 C.F.R. §413/106 as it existed during the periods at issue and that was issued in contravention of the required notice and comment procedures of the APA;

(4)   A declaration that the disallowances of Plaintiff's PT and deferred compensation plan costs are invalid because the disallowances are otherwise arbitrary and capricious, unsupported by substantial evidence, and otherwise contrary to law;

(5)   An order reversing the Secretary's decision to permit the disallowances of Plaintiff's PT and deferred compensation plan costs and requiring Defendant to make prompt payment to Plaintiff for the amounts disallowed, plus interest, in accordance with 42 U.S.C. §1395oo(f)(2);

(6)   An order requiring Defendant to pay the legal fees and costs of suit incurred by Plaintiff pursuant to 5 U.S.C. §504(a); and

(7)   Such other relief as the Court may consider appropriate.

Respectfully submitted,

*[signature]*

William A. Dombi
DC Bar No. 445832
Center for Health Care Law
228 Seventh Street, SE
Washington, DC 20003
Tel. (202) 547-5262
Fax (202) 547-7126
Email: wad@nahc.org

Attorney for Plaintiff

March 13, 2008

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
Visiting Nurse Association of Texas, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William A. Dombi
Center for Health Care Law
228 7th Street, SE
Washington, D.C. 20003
202-547-5262

## DEFENDANTS
Michael O. Leavitt, Secretary, US Department of Health and Human Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☒ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⬤ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Under 42 USC 1395oo(f), an appeal for Medicare reimbursement.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** _____    Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE March 13, 2008    SIGNATURE OF ATTORNEY OF RECORD *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.